UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                            :
MONSIEUR TOUTON SELECTION,                  :
LTD.,                                       :
                        Plaintiff,          :       OPINION AND ORDER
                                            :
        - against -                         :       06 Civ. 1124 (SAS)
                                            :
FUTURE BRANDS, LLC, THE ABSOLUT :
SPIRITS COMPANY, INC., and JIM              :
BEAM BRANDS CO., jointly severally and :
individually,                               :
                        Defendants.         :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/1/06

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.      INTRODUCTION

        Plaintiff Monsieur Touton Selection Ltd. ("Touton"), a spirits

wholesaler, brings this action against defendants Future Brands, LLC ("Future

Brands"), the Absolut Spirits Company ("Absolut"), and Jim Beam Brands Co.

("Beam") (collectively, "defendants").  Plaintiff alleges that defendants have

violated both federal antitrust laws and the laws of New Jersey by refusing to

honor plaintiff's purchase orders for defendants' Absolut Vodka line of products,

and by discriminating against Touton with regard to the terms of sale of one

particular type of Absolut Vodka.  All defendants now move to dismiss Touton's

1

federal claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

For the following reasons, defendants' motion is granted, but plaintiff is granted

leave to file a Second Amended Complaint.[2]

## II. BACKGROUND[3]

### A. The Parties

Touton is a New York corporation with its registered corporate

offices in Willingboro, New Jersey.[4] It claims to be an authorized wholesaler of

Absolut Vodka, one of the leading brands of vodka in the United States.[5]

However, defendants assert, and plaintiff agrees, that "[o]f all of [Absolut's]

branded vodkas, Touton was authorized to distribute only Absolut Vodka 80 proof

---

[1]     Defendants also assert that if their motion is granted, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. In any case, defendants argue that most, if not all, of plaintiff's state law claims are barred by the doctrine of *res judicata* as a result of prior proceedings before a New Jersey administrative agency.

[2]     *But see infra* Part IV.C (warning that a Second Amended Complaint must not be filed unless plaintiff and plaintiff's counsel reasonably believe that the deficiencies identified in this Opinion can be addressed).

[3]     Unless otherwise noted, the facts set forth in this section are drawn from plaintiff's Complaint and assumed to be true for present purposes. *See, e.g., Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 30 (2d Cir. 2004) (citation omitted).

[4]     *See* First Amended Complaint ("Compl.") ¶ 1.

[5]     *See id.* ¶ 9.

2

('Absolut Blue')."[6]

Future Brands is a joint venture between defendants Absolut and

Beam.[7] All three defendants are Delaware corporations.[8] Future Brands and

Beam have their principal place of business in New Jersey, while Absolut operates

from New York City.[9] Plaintiff also alleges the existence of "various persons not

named as defendants herein [who] have participated as co-conspirators in the

offense[s] hereinafter alleged, and [who] have performed acts and made statements

in furtherance thereof."[10]

## B. The Alleged Misconduct

The gravamen of plaintiff's allegations is that "[o]ver the past three

years, the Defendants have engaged upon [sic] a course of conduct designed to

---

[6]     Defendants' Memorandum of Law in Support of Their Joint Motion
to Dismiss Plaintiff's First Amended Complaint For Failure to State a Claim Upon
Which Relief Can be Granted ("Def. Mem.") at 1. *Accord* Plaintiff's
Memorandum of Law in Opposition to the Defendants' Motion to Dismiss [the]
First Amended Complaint ("Pl. Mem.") at 8 ("Defendants argue that they are
unaware of what product is in issue. Yet the Defendants have already noted that
the only product *sold* to the Plaintiff was 'Absolut Blue 80.' What other product
could [defendants] have had in mind?").

[7]     *See* Compl. ¶ 2.

[8]     *See id.* ¶¶ 2-4.

[9]     *See id.*

[10]     *Id.* ¶ 7.

3

limit the Plaintiff's ability to offer the Absolut Brand."[11]  This conduct has

apparently taken many forms, "including but not limited to: disparate treatment in

amount and type of product available for shipment, discriminatory pricing, failure

to provide to Plaintiff pricing and other benefits offered to other similarly situated

but favored entities; failure to deliver the entire range of products offered to other

distributors and/or wholesalers."[12]

More specifically, plaintiff has repeatedly had its purchase orders for

Absolut Vodka rejected, ignored, or otherwise not fulfilled.[13]  According to

plaintiff, defendants have also "acted to limit the allocation of its product(s) to the

Plaintiff without justification or reason."[14]  Plaintiff also alleges that "the

Defendants stated that [they] would price the products based upon the shipping

date . . . not the date of acceptance of the purchase order(s)."[15]

According to Touton, defendant Absolut, as well as its parent

---

[11]     *Id.* ¶ 10.

[12]     *Id.*

[13]     *See id.* ¶¶ 11-12.

[14]     *Id.* ¶ 13.

[15]     *Id.* ¶ 23.

4

corporation,[16] "treat[] its brand 'Absolut' as a unified and singular business unit, and [have] promoted the brand 'Absolut' over and above any individual type of vodka [they] may sell or offer."[17] But "despite its treatment of the entire line of Absolut products as unified, [defendant Absolut] has steadfastly refused to provide the Plaintiff with the entire line of Absolut brand vodka products, without reason or justification."[18]

Out of these facts, plaintiff pleads several causes of action. The federal antitrust claims appear to consist of Counts Four, Five and Eight. Count Four, denominated as an allegation of "Unfair Business Practices," charges that "Defendants have offered promotions, commercial bribes, special deals and pricing, benefits and bonuses to the competitors of the Plaintiff, but has not offered the same to the Plaintiff, thereby creating a separate and different class of distributor."[19] Count Five, "Deceptive Trade Practices," alleges that "Defendants have created a program identified as the 'entity grant' program, which, upon information and belief, is administered unequally and constitutes an illegal

---

[16] Absolut is a wholly-owned subsidiary of Vin & Spirit, a Swedish corporation not named as a defendant here. *See id.* ¶ 54.

[17] *Id.* ¶ 55.

[18] *Id.* ¶ 56.

[19] *Id.* ¶ 34.

5

kickback and/or subsidy scheme."[20] Count Eight alleges "Price Discrimination," and charges that "Defendants have conspired among themselves and others unnamed to discriminate against the Plaintiff as to price, availability, quantity and other terms so as to eliminate the Plaintiff as a competitor in the relevant market in violation of the Robinson-Patman Act."[21]

The Complaint also sets forth an assortment of state law claims arising out of plaintiff's business dealings with defendants.[22] Plaintiff seeks various forms of relief, including compensatory, punitive and treble damages, an injunction compelling defendants to treat Touton the same way as they treat other wholesalers, and a declaratory judgment to essentially the same effect.[23]

## C. New Jersey Proceedings

The parties have already engaged in a protracted struggle concerning Touton's rights to distribute Absolut Vodka, which until now has taken place

---

[20] *Id.* ¶ 39. Touton does not provide any details regarding the "entity grant program."

[21] *Id.* ¶ 51.

[22] *See id.* ¶¶ 20-33, 41-49.

[23] *See id.* ¶¶ 19, 77, 79.

6

entirely in New Jersey.[24] In January 2004, Absolut petitioned the New Jersey

Division of Alcoholic Beverage Control ("NJ ABC") for a declaration that it was

permitted to stop selling Absolut Blue to Touton pursuant to New Jersey's Anti-

Discrimination Act.[25] Absolut accused Touton of improperly using Absolut Blue

as a loss leader to gain access to retail accounts for Touton's own inventory of

wines.[26] Plaintiffs filed a counter-petition with NJ ABC, asserting many of the

same allegations contained in the Complaint.

After ruling that Touton was not entitled to purchase the full line of

Absolut-branded vodka under New Jersey law, the NJ ABC referred both parties'

claims to an Administrative Law Judge ("ALJ"). On March 13, 2006, the ALJ

ruled that Touton had forfeited the protections of the New Jersey Anti-

---

[24] The Complaint makes no mention of these proceedings. Thus, the facts set forth in this section are drawn from the public records of the prior proceedings submitted by defendants, which the Court may consider even on a motion to dismiss pursuant to Rule 12(b)(6). *See, e.g., Blue Tree Hotel Inv. (Canada) v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (courts "may [] look to public records, including complaints filed in state court, in deciding a motion to dismiss").

[25] In brief, the New Jersey Anti-Discrimination Act, N.J.S.A. § 33:1-93.6, outlaws discrimination in sales to wholesalers.

[26] The Complaint seems to admit as much. *See* Compl. ¶ 9 ("The Absolut Brand is an important part of the product line of [Touton], and it also serves as an entree to retailers who then may purchase other items carried by [Touton]").

7

Discrimination Act, a ruling which allowed Absolut to discontinue sales of

Absolut Blue to Touton. Touton's cross-claims were also dismissed. Both of

these rulings were the result of Touton's failure to provide discovery in the

administrative law proceeding, despite repeated warnings by the ALJ that such

failures would result in an adverse judgment against it.[27] The ALJ's rulings were

affirmed by the NJ ABC on May 10, 2006. Touton now asserts, without

elaboration, that the NJ ABC's decision affirming the ALJ ruling is "on appeal."[28]

Touton also initiated an action in New Jersey Superior Court in

February 2004, raising many of the state law claims raised before the NJ ABC and

in the present action. The Superior Court action was swiftly dismissed under the

doctrine of primary jurisdiction in deference to the NJ ABC.

## III. APPLICABLE LAW

### A. Legal Standard

---

[27] *See* Final Conclusion And Order, *The Absolut Spirits Co. v. Monsieur Touton Selection, Ltd.*, No. 02-06 at 3-5 (N.J. Div. Alcoholic Beverage Control Mar. 10, 2006), Exh. D to Def. Mem. (affirming ALJ's decision to dismiss Touton's answer and cross-petition as a sanction for failure to provide adequate discovery).

[28] Pl. Mem. at 3 ("The underlying litigation and their [sic] respective venues are neither improper nor an attempt to forum shop. The administrative ruling(s) [of the NJ ABC, presumably] have been appealed. . . ."). After the word "appealed," plaintiff dropped a footnote stating, in its entirety, "June 27, 2006." *Id.* at 3 n.5. Touton does not disclose in which court its appeal is pending.

8

### 1. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'"[29] Plaintiffs receive "the benefit of any fact that could be established later consistent with the complaint's allegations."[30] At the same time, although the plaintiff's allegations are taken as true, the claim may still fail as a matter of law if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief, or if the claim is not legally feasible.[31]

### 2. Rule 8(a)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Complaints are not required to "lay out facts corresponding

---

[29] *Global Network Commc'ns, Inc. v. City of New York*, – F.3d –, 05-3298-CV, slip op. at 8 (2d Cir. July 24, 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[30] *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006). The task of the court in ruling on a Rule 12(b)(6) motion is "not to assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quotation and citation omitted).

[31] *See, e.g., Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2d Cir. 2003).

to every 'element' of a legal theory."[32]  Rather, plaintiffs plead claims "which is to

say, grievances," and need not allege "either the factual or legal 'elements' of a

prima facie case."[33]  Rather, a complaint must merely "'give the defendant[s] fair

notice of what the plaintiff's claim is and the grounds upon which it rests.'"[34]  Fair

notice is "'that which will enable the adverse party to answer and prepare for trial,

allow the application of *res judicata*, and identify the nature of the case so that it

may be assigned the proper form of trial.'"[35]  Accordingly, a complaint "'need not

set out in detail the facts upon which the claim is based.'"[36]

## B.    Robinson-Patman Act

---

[32]    *Simpson*, 450 F.3d at 305. *Accord Phillips v. Girdich*, 408 F.3d 124,
130 (2d Cir. 2005) (Rule 8(a) does not require "a plaintiff to plead the legal
theory, facts, or elements underlying [its] claim ") (citation omitted).

[33]    *Simpson*, 450 F.3d at 305 (citing *Swierkiewicz v. Sorema N.A.,* 534
U.S. 506 (2002)).

[34]    *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 48 (1957)).

[35]    *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (quoting
*Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  This notice pleading
standard relies on the "'liberal opportunity for discovery and the other pretrial
procedures'" to more precisely disclose "'the basis of both claim and defense and
to define more narrowly the disputed facts and issues.'" *Century 21, Inc. v.
Diamond State Ins. Co.,* 442 F.3d 79, 83 (2d Cir. 2006) (quoting *Conley*, 355 U.S.
at 47-48).

[36]    *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir. 2006) (quoting
*Twombly v. Bell Atl. Corp.,* 425 F.3d 99, 107 (2d Cir. 2005)).

The only possible federal claims raised by the Complaint are claims

under sections 2(a), 2(c), 2(d) or 2(e) of the Clayton Act, as amended by the

Robinson-Patman Act (hereinafter "Robinson-Patman Act"). There are no special

pleading requirements beyond Rule 8(a) for Robinson-Patman Act claims.[37]

However, even under Rule 8(a), a complaint must be more than "a bare bones

statement of conspiracy or . . . injury under the antitrust laws without any

supporting facts."[38]

### 1. Section 2(a)

Section 2(a), in sum, prohibits discriminatory pricing among

competing buyers of the same goods.[39] To state a claim for secondary-line price

---

[37] *See, e.g., Twombly*, 425 F.3d at 108-109 (quotation and citation omitted).

[38] *Id.* at 109 (quotation and citation omitted).

[39] Section 2(a) provides in pertinent part:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a).

discrimination[40] under section 2(a), a plaintiff must allege that: (1) the seller made sales in interstate commerce; (2) the seller discriminated in price between two different buyers; (3) the product sold to both purchasers was of like grade and quality; and (4) the price discrimination had an unlawful effect on competition.[41]

In order to establish an unlawful effect on competition, a plaintiff must allege that it was actually competing with the favored purchaser at the time of the price discrimination.[42] An allegation of actual competition at the time of the price discrimination, and of a price discrimination that was substantial and sustained over time, will satisfy the fourth element of a section 2(a) claim.[43]

## 2. Section 2(c)

Section 2(c) provides in pertinent part that "[i]t shall be unlawful for any person engaged in commerce . . . to pay or grant, or to receive or accept,

---

[40] Price discrimination claims are classified as "primary line," "secondary line," or "tertiary line." A secondary line claim, which Touton asserts here, is a claim where the allegedly injured plaintiff is in competition with a favored customer of the same seller. *See George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 141 n.2 (2d Cir. 1998).

[41] *See Volvo Trucks N. Am, Inc. v. Reeder-Simco GMC, Inc.*, 126 S. Ct. 860, 870 (2006) ("*Volvo Trucks*") (citing statute); *see also George Haug Co.*, 148 F.3d at 141 (citation omitted).

[42] *See George Haug Co.*, 148 F.3d at 141; *see also Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584-85 (2d Cir. 1987).

[43] *See George Haug Co.*, 148 F.3d at 142-44.

anything of value as a commission, brokerage, or other compensation . . . except

for services rendered in connection with the sale or purchase of goods, wares or

merchandise. . . ."[44] The Second Circuit has left open the question of whether

section 2(c) creates a general right of action for commercial bribery.[45] To the

extent that such an action exists, a plaintiff must at a minimum allege that

payments were made with the "intent to influence improperly the conduct of

another by bestowing a benefit, [as] the essence of bribe receiving is in the

agreement or understanding that the recipient's conduct will be influenced by the

benefit."[46] Thus, an allegation that a payment was made or received by defendant,

without an allegation that such payment was improper in some way, does not state

a claim under section 2(c).[47]

### 3.    Sections 2(d) and 2(e)

Section 2(d) prohibits a seller from discriminating among its

customers with regard to "any services or facilities furnished by or through such

customer in connection with the processing, handling, sale or offering for sale or

---

44      15 U.S.C. § 13(c).

45      *See Blue Tree Hotels Inv. (Canada), Ltd.*, 369 F.3d at 218.

46      *Id.* at 222 (citation omitted).

47      *See id.* at 222-23 (collecting cases).

13

any products or commodities manufactured, sold, or offered for sale."[48]  Section

2(e), in turn, prohibits such discrimination in providing "services or facilities

connected with the processing, handling, sale or offering for sale" of a commodity

purchased from the seller.[49]  "These provisions were designed to prohibit indirect

price discrimination in the form of advertising and other promotional allowances

made available to purchasers on disproportionate terms."[50]

　　　　Sections 2(a), 2(d) and 2(e) share many common elements.  For

example, "[c]ourts have read section 2(a)'s "in commerce" requirement into both

sections 2(d) and (e) . . . [and] [t]he plaintiff must demonstrate that the goods or

commodity apply only to offers to customers competing in the same geographic

area, and reselling at the same functional level."[51]  However, while a plaintiff must

demonstrate "actual injury," sections 2(d) and (e), unlike section 2(a), do not

require demonstration of an injury to *competition*.[52]

---

[48]　　15 U.S.C. § 13(d).

[49]　　15 U.S.C. § 13(e).

[50]　　*George Haug Co.*, 148 F.3d at 144 (citation omitted).  "Section 2(d)
and Section 2(e) differ in that in the former, the purchaser supplies the services or
facilities and the supplier repays the purchaser; in the latter, the seller supplies the
services and facilities for use of the customer in facilitating resales."  *Id.*

[51]　　*Id.* (internal citation omitted).

[52]　　*See id.*

14

## IV. DISCUSSION

### A. Plaintiff's Robinson-Patman Act Claims Must Be Dismissed

Even under the permissive regime of notice pleading, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent" dismissal.[53] Here, the Complaint provides an abundance of conclusory statements asserting defendants' malfeasance, but is devoid of allegations from which, even drawing all inferences in plaintiff's favor, a court could conclude that Touton has stated a claim for a violation of the Robinson-Patman Act or any other federal antitrust law. By the same token, the Complaint is far too vague to provide defendants with the notice of the claims against them to which they are entitled. Accordingly, the Complaint must be dismissed.

### 1. Plaintiff Has Not Stated a Section 2(a) Claim

In order to state a claim for a violation of section 2(a), Touton must allege the following: *first*, that relevant vodka sales were made in interstate commerce; *second*, that the vodka sold contemporaneously to Touton and to other

---

[53] *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). *Accord Klebanow v. New York Produce Exch.*, 344 F.2d 294, 299 (2d Cir. 1965) (Friendly, J.) ("[a] mere allegation that defendants violated the antitrust laws as to a particular plaintiff and commodity no more complies with Rule 8 than an allegation which says only that a defendant made an undescribed contract with the plaintiff and then breached it or that defendant owns a car and injured plaintiff by driving it negligently").

wholesalers was of "'like grade and quality'"; *third*, that defendants

"'discriminate[d] in price between'" Touton and those other wholesalers of vodka;

and *fourth*, that "'the effect of such discrimination may be . . . to injure, destroy, or

prevent competition' to the advantage of a favored purchaser, i.e., one who

'receive[d] the benefit of such discrimination.'"[54] Defendants contest the

adequacy of plaintiff's pleading as to the last three elements, arguing in essence

that the Complaint is so vague and conclusory as to fall far short of even Rule 8(a)

pleading standards. Defendants are correct.

Much of the Complaint pertains to Touton's contention that

defendants unlawfully refuse to sell to Touton any Absolut Vodka products *except*

Absolut Blue.[55] But this type of grievance is simply not cognizable under the

Robinson-Patman Act.[56] Section 2(a) itself states that "nothing herein [] shall

---

[54]     *Volvo Trucks*, 126 S. Ct. at 870 (quoting 15 U.S.C. § 13(a)).

[55]     *See* Compl. ¶ 10 (alleging "failure to deliver the entire range of
products offered to other distributors"); *id.* ¶ 11 (defendants have rejected
Touton's purchase orders); *id.* ¶¶ 12-16, 23, 26, 27, 31, 44-45, 55-58 (same); *id.* ¶
77(d) (seeking a declaratory judgment that "Plaintiff, as an authorized distributor
of Absolut [V]odka products is entitled to purchase the entire line of vodka
products, including flavors, sizes and quantities [sic]"). The Complaint does not
specify the product that Touton actually buys from defendants, instead referring to
the undifferentiated "Absolut Brand." *See id.* ¶¶ 9-10.

[56]     *See Black Gold, Ltd. v. Rockwool Indus., Inc.*, 729 F.2d 676, 682-83
(10th Cir. 1984) ("the prohibition on discriminatory pricing contained in Section

16

prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade." The Supreme Court long ago held that this provision of section 2(a) incorporates the "*Colgate* doctrine," which is the "'long recognized right of a trader or manufacturer engaged in an entirely private business [] freely to exercise [its] own independent discretion as to parties with whom [it] will deal.'"[57] Thus, any Robinson-Patman claim premised on defendants' unwillingness to sell Touton the full range of Absolut Vodka products must be dismissed.

To the extent Touton means to allege that defendants have committed price discrimination with regard to the sale of *Absolut Blue*, it omits several necessary allegations. *First*, as a matter of logic, "at least two transactions must

---

2(a) . . . does not reach mere offers to sell or refusals to deal"); *see also Atalanta Trading Corp. v. FTC*, 258 F.2d 365, 372-73 (2d Cir. 1958) ("Nothing in the Robinson-Patman Act imposes upon a supplier an affirmative duty to sell to all potential customers"); *New Amsterdam Cheese Co. v. Kraftco Corp.*, 363 F. Supp. 135, 142 (S.D.N.Y. 1973) (defendant's decision to sell plaintiff only part of a line of products does not constitute "price discrimination" within the meaning of the Robinson-Patman Act).

[57]     *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *see also FTC v. Simplicity Pattern Co.*, 360 U.S. 55, 64 (1959) (*Colgate* doctrine codified by section 2(a) of Robinson-Patman).

17

take place in order to constitute a discrimination [in price]."[58]  Moreover, the

transactions in question must be reasonably contemporaneous with each other.[59]

The Complaint is utterly devoid of any allegation of a specific transaction,

contemporaneous or otherwise, consummated by defendants with Touton or with

any allegedly favored competitor.  For that matter, the Complaint does not *identify*

any allegedly favored competitor except in the most conclusory terms.[60]

---

[58]    *Bruce's Juices, Inc. v. American Can Co.*, 330 U.S. 743, 755 (1947).
*Accord Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200 (1974) (assuming
that a price discrimination claim requires "two transactions which, when
compared, generate a discrimination"); *see also Cancall PCS v. Omnipoint Corp.*,
No. 99 Civ. 3395, 2000 WL 272309, at *8 (S.D.N.Y. Mar. 10, 2000) (dismissing
section 2(a) claim – "plaintiffs do not allege that there have been two
contemporaneous sales of the same commodity at different prices by the
Equipment Manufacturers. Rather, plaintiffs allege only that the Equipment
Manufacturers sold handsets to Omnipoint at a certain price, but refused to sell
these items to plaintiffs.  This does not meet the requirement that two sales
actually take place.").

[59]    *See, e.g., Crossroads Cogeneration Corp. v. Orange & Rockland
Utils., Inc.*, 159 F.3d 129, 142 (3d Cir. 1998) (citing *Brooke Group Ltd. v. Brown
& Williamson Tobacco Corp.*, 509 U.S. 209, 219-27 (1993)) ("In order to state a
claim under the Robinson-Patman Act, a plaintiff must allege facts to demonstrate
that [inter alia] the defendant made at least two contemporary sales of the same
commodity at different prices to different purchasers.").

[60]    The only references to favored competitors in the Complaint are *first*,
an allegation that defendants have discriminated against plaintiff by, inter alia, a
"failure to provide to Plaintiff pricing and other benefits offered to other similarly
situated but favored entities;" Compl. ¶ 10; *second*, an assertion that "[b]ecause of
the actions of the Defendants, the Plaintiff has lost and will continue to lose
significant profits [and will be] unable to compete in the market as an equally

18

*Second*, the Complaint contains no allegation relevant to the

requirement that there be a discriminatory transaction involving goods of like

grade or quality. Touton identifies itself as an "authorized wholesaler of Absolut

Vodka."[61] But as it tacitly admits in its opposition brief, Touton has only ever

been authorized to sell *Absolut Blue*.[62] Thus, Touton must allege that a favored

purchaser bought *Absolut Blue* on more favorable terms than those offered to

Touton.[63] Because, among other reasons, the words "Absolut Blue" never appear

in the Complaint, Touton has failed in this task.

*Third*, plaintiff makes little attempt to allege harm to competition

resulting from the alleged price discrimination. The Second Circuit requires a

plaintiff to allege that it was actually competing with the favored purchaser at the

---

situated competitor to the favored competitor; *id.* ¶ 11; and *third*, "plaintiff has
been harmed . . . in that its price basis is higher than its competitors." *Id.* ¶ 18.

  61    *Id.* ¶ 9.

  62    *See supra* note 6 and accompanying text.

  63    *See Tires Inc. of Broward v. Goodyear Tire & Rubber Co.*, 295 F.
Supp. 2d 1349, 1352-53 (S.D. Fla. 2003) (dismissing price discrimination claim in
part because plaintiffs did not "sufficiently allege that the tires [sold by defendant
supplier] are of like grade and quality. . . . Plaintiff should be required to name in
its complaint the specific tires by make and model sold by [supplier] to a particular
[competitor] and to state with some specificity the facts which support the ultimate
conclusion that the tires are of like grade and quality.").

19

time of the alleged discrimination.[64] All Touton offers are boilerplate assertions

that "the elimination of the Plaintiff as a distributor of the Defendants' product(s)

will lessen competition among distributors in the relevant marketplace, and in

interstate commerce."[65] But as already noted, the Complaint does not allege the

existence of a single favored purchaser, and gives virtually no indication of the

time period in which the alleged discrimination took place.[66]

Touton asserts that the Complaint "clearly states the type of conduct

and the nature of the Defendants' actions," and protests that "[w]hat the

Defendants are really suggesting is that the Plaintiff put on its entire case within

the four corners of its complaint, and provide a factual recitation that is more than

the notice pleading rules require."[67] But to demonstrate that the Complaint puts

defendants on adequate notice of the claims against them, plaintiffs' opposition

brief relies on the record developed in the New Jersey proceedings (which

*defendants*, rather than plaintiff, submitted to the Court) – "[b]eyond [sic] the

---

[64]     *See George Haug Co.*, 148 F.3d at 141.

[65]     Compl. ¶ 17.

[66]     The Complaint refers to defendants' unlawful course of conduct over "the last three years," *id.* ¶ 10, but it appears from context that Touton refers to the time frame in which defendants declined to sell the full line of Absolut Vodka, which as noted above does not constitute a Robinson-Patman Act violation.

[67]     Pl. Mem. at 5.

20

documents submitted in the various fora, the Defendants are on notice of the issues and assertions."[68]

Touton's references to the New Jersey proceedings are beside the point.[69] Regardless of what happened in other fora, defendants are entitled to adequate notice of the claims against them in *this* forum. A defendant is not required to simply assume, based on vague allusions from a plaintiff, that the subject matter of the present action is similar to that of an earlier action between

---

[68]   *Id.* at 9; *see also id.* at 8 ("one of those [discriminatory] transactions was the subject of a New Jersey Superior Court action"); *see also id.* (even though Absolut Blue is nowhere mentioned in the Complaint, plaintiff asserts that defendants are aware that Absolut Blue is the product at issue: "What other product could [defendants] have had in mind?"); *see also id.* at 9 ("Plaintiff has already filed various petitions and responses to the petitions of the Defendants asserting with great specificity the dates of alleged terminations, discrimination and pricing 'treatment' disparities").

[69]   Moreover, Touton's argument that the record of the prior proceedings affords defendants adequate notice contradicts Touton's assertion that it is excused from meeting the Rule 8(a) standard because "much of the material supporting the plaintiff's case rests exclusively with the Defendants." *Id.* at 6. As defendants note, Touton should already possess much of the information needed to state a claim, including (for example) the product which is the subject of the alleged price discrimination, the dates on which defendants sold product to Touton; and the identity of Touton's competitors. *See* Defendants' Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Reply Mem.") at 4.

21

the same parties.[70] It would be improper to allow this case to proceed when

defendants are largely clueless with respect to: which of its customers are alleged

to have received favored treatment compared to Touton; which product or

products are the subject of the alleged price discrimination; the general time

period that the discrimination against Touton is alleged to have taken place; or the

time and place of even a single allegedly discriminatory transaction.[71]

Quite aside from the right of a defendant to adequate notice of

plaintiff's claims and the grounds upon which they rest, *the Court* requires a

complaint that permits the application of *res judicata*.[72] Indeed, defendants have

raised *res judicata* as a defense to the many state law claims asserted against them

by Touton. I need not reach this issue now because I do not intend to exercise

[70]     And to the extent that Touton's references to the New Jersey
proceedings are intended to augment the Complaint's allegations, such efforts
constitute an improper attempt to amend the complaint. *See, e.g., In re
GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432, 445 n.100 (S.D.N.Y. 2005)
(complaint cannot be amended by a brief in opposition to a motion to dismiss).

[71]     *See In re Kitchen & Bath Fixtures Antitrust Litig.*, No. 05-CV-00510,
2006 WL 2038605, at \*4 (E.D. Pa. July 19, 2006) (dismissing antitrust class
action: "[s]hould this case go forward with the . . . complaint in its present form, []
defendants would be forced to defend against a large scale class action with no
notice of what they allegedly did wrong beyond the general claim that they agreed
to fix the prices of a large amount of products and carried out that agreement . . .
such allegations do not meet the requirements of Rule 8(a)(2).").

[72]     *See, e.g., Wynder*, 360 F.3d at 79 (quotation and citation omitted).

22

supplemental jurisdiction over Touton's state law claims, but I note that it is difficult if not impossible to determine from the Complaint whether the allegations Touton made to the NJ ABC are identical, similar, or completely dissimilar to the allegations made in support of Touton's claims in this Court.

## 2. Plaintiffs Have Not Stated a Claim Under Any Other Provision of Robinson-Patman

The deficiencies of the Complaint identified by the foregoing discussion apply equally to Touton's attempt to plead a section 2(d) or 2(e) claim. In order to make out any such claim, Touton must, *inter alia*, indicate the nature of the "services or facilities" offered to favored purchasers but not to Touton. The only allegation that might bear on this issue is plaintiff's averment that "[t]he Defendants have created a program identified as the 'entity grant' program, which upon information and belief, is administered equally and constitutes an illegal kickback and/or subsidy scheme."[73] But even aside from the fact that there is no information in the Complaint concerning the parameters of the entity grant program, plaintiff must still identify at least one favored competitor who received

---

[73]    Compl. ¶ 38. The allegation that "upon information and belief, the Defendants have offered promotions, commercial bribes, special deals and pricing, benefits and bonuses to the competitors of the Plaintiff, but [have] not offered the same to the Plaintiff, thereby creating a separate and different class of distributor," *id.* ¶ 35, is of course wholly conclusory and thus completely inadequate to place defendants on notice of which of their programs are alleged to be unlawful.

23

the benefit of this program or any other allegedly unlawful "service" or "facility" offered by defendants.

Finally, Touton alludes to defendants' alleged offering of "commercial bribes" to unidentified "competitors of the Plaintiff."[74] This allegation fails to state a commercial bribery claim under Section 2(c), even assuming such a claim exists under Second Circuit law. The Second Circuit recently affirmed the dismissal of a similarly conclusory "commercial bribery" claim for reasons that apply equally here, noting that:

> [Plaintiffs] allege that [defendant] and its vendors entered into purchase agreements pursuant to which the vendors would pay "allowances, bonuses, charges, commissions, credits, discounts, fees, incentives, profits, rebates, and/or kickbacks" to [defendant]. Based on these allegations, [plaintiffs] contend that [defendant] and its vendors engaged in a "Kickback Scheme" that constituted commercial bribery. This claim, however, is premised entirely on the tautology created by the fact that [plaintiffs] have labeled the payments made by vendors "Kickbacks": because the vendors pay kickbacks to [defendant], they are engaged in commercial bribery, and because the parties are engaged in commercial bribery, the payments made by vendors are kickbacks. Substituting [plaintiffs] repeated use in their complaint of the freighted word "Kickback" with the more benign "vendor payment" reveals that [plaintiffs] have not alleged any improper intent or conduct on the part of the vendors who made the payments to [defendants].[75]

---

[74] *Id.* ¶ 35.

[75] *Blue Tree Hotels Inv. (Canada), Ltd.*, 369 F.3d at 221 (quoting plaintiff's complaint).

The *Blue Tree Hotels* court went on to note that "commercial bribery cannot be committed unilaterally by an alleged bribe receiver: one cannot be guilty of receiving a commercial bribe unless someone else is guilty of paying it."[76] Touton's commercial bribery allegation suffers from the opposite problem – one cannot be guilty of *paying* a commercial bribe unless someone else is guilty of *receiving* it. Defendants' point is well taken that, while Touton alleges that commercial bribes were "offered," Touton never alleges that such bribes were *received* by anyone.[77] In sum, Touton's allegation that unidentified competitors were offered unidentified payments by defendants does not state a Section 2(c) claim.

## B. Supplemental Jurisdiction

There is no diversity jurisdiction in this case because Touton shares New Jersey corporate citizenship with two of the three defendants. And as this case is still at an early stage, there is no reason to exercise supplemental jurisdiction over Touton's state law claims once the federal claims are dismissed.[78]

---

[76] *Id.*

[77] *See* Def. Mem. at 14 (quoting Compl. ¶ 35).

[78] *See Kolari v. New York-Presbyterian Hosp.*, – F.3d –, 05-1981-CV, 2006 WL 1901019, at *4 (2d Cir. July 11, 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) ("'in the usual case in which all

Moreover, principles of comity weigh heavily in favor of declining supplemental jurisdiction here. Determination of the preclusive effect of the NJ ABC's judgment is a matter of New Jersey law.[79] But as noted above, Touton lost its case before the NJ ABC because of its abject failure to participate in discovery, not because the ALJ or the NJ ABC reached the merits of the parties' contentions. Defendants analogize to a dismissal based on a plaintiff's failure to prosecute, but then acknowledge that "[t]he question of whether to apply *res judicata* to default judgments against plaintiffs who fail to prosecute remains unresolved."[80] To the extent that defendants' *res judicata* argument may present novel issues of New Jersey law, New Jersey courts should resolve such issues.[81]

federal-law claims are eliminated before trial, the balance of [relevant] factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'")

[79]    *See* 28 U.S.C. § 1738 (requiring a federal court to give a state court judgment the same preclusive effect as would a sister court of the same state). In New Jersey, *res judicata* applies when (1) the judgment in the prior action was valid, final and on the merits; (2) the parties in the later action are identical or in privity to those in the prior action; and (3) the claim in the later action grows out of the same transaction or occurrence as the claim in the prior action. *See, e.g., Watkins v. Resorts Int'l Hotel & Casino*, 591 A.2d 592, 599 (N.J. 1991).

[80]    Def. Mem. at 19 n.9 (citation omitted).

[81]    *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of

## C. Leave to Amend

"It is the usual practice upon granting a motion to dismiss to allow leave to replead."[82] I grant such leave here with great reluctance, for two reasons. *First*, Touton (inexplicably) neglected to request leave to replead in the event its Complaint is dismissed. *Second*, I previously allowed Touton to amend its original Complaint after defendants had already filed a motion to dismiss, raising many of the same arguments they raise on the present motion.[83] Even with the benefit of this detailed critique of the original Complaint, Touton was still unable to produce a Complaint sufficient to put its opponents on notice of the grounds for the claims against them.

Although facts such as these often permit a conclusion that further amendment would be futile,[84] in this case it may still be possible for Touton to

---

applicable law"). *Accord Kolari*, 2006 WL 1901019, at \*5 (citation omitted) ("[w]e have repeatedly held that a district court particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims.").

[82]     *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991).

[83]     In fact, much of the text of defendants' opening Memorandum of Law in support of their present motion is lifted straight out of their Memorandum of Law in support of their motion to dismiss the original Complaint.

[84]     *See Weinraub v. Glen Rauch Secs.*, 399 F. Supp. 2d 454, 466 n.93 (S.D.N.Y. 2005), *aff'd*, 05-6093-CV, 2006 WL 1236149 (2d Cir. May 9, 2006)

plead a Robinson-Patman Act claim consistent with this Opinion.[85] Thus, I will

give Touton one last chance to amend its Complaint within twenty days of the date

of this Opinion. However, no Second Amended Complaint should be filed unless

Touton and its counsel reasonably believe that the deficiencies identified in this

Opinion can be addressed.

        Moreover, defendants are quite correct that "it is *Plaintiff's burden* to

file a pleading from which the preclusive effect of [] prior litigation can be

ascertained."[86] If Touton again fails to meet this burden, and if it becomes

necessary to reach the merits of the state law claims, the Court will not waste its

time making uneducated guesses as to which claims may be precluded by the

---

(unpublished) (leave to replead denied in part because "[plaintiff] has already amended his Complaint once, after [defendants] moved to dismiss his original Complaint, and submitted briefs in support of those motions"); *Rampersad v. Deutsche Bank Secs.*, No. 02 Civ. 7311, 2004 WL 616132, at *8 (S.D.N.Y. Mar. 30, 2004) (leave to replead denied when "plaintiff . . . filed his Amended Complaint after briefing Defendants' motions to dismiss the original complaint.").

[85]    *See In re Kitchen & Bath Fixtures*, 2006 WL 2038605, at *8 (despite antitrust plaintiffs' failure to meet even "the minimal requirements of notice pleading," plaintiffs were allowed to replead based on the possibility that supplemental facts could be provided by an amended complaint); *see also Klebanow*, 344 F.2d at 299-300 (amendment should be allowed when complaint was found to have fallen short of Rule 8(a) requirements).

[86]    Reply Mem. at 8 (emphasis in original) (citing *Twombly*, 425 F.3d at 99, 107).

judgment of the NJ ABC. Instead, another impermissibly vague Complaint may lead to the conclusion that Touton's state law claims are entirely barred by *res judicata*.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted without prejudice. Plaintiff is granted leave to file a Second Amended Complaint within twenty days of the date of this Opinion and Order. The Clerk of the Court is directed to close the pending motion [number 13 on the docket sheet].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
         July 31, 2006

## - Appearances -

**For Plaintiff:**

Michael A. Berliner, Esq.
TEPPER, SCHERLING, KAPLAN & BERLINER, LLC
570 W. Mount Pleasant Avenue
Livingston, NJ 07039
(973) 740-1785

**For Defendants:**

Lawrence I. Fox, Esq.
MCDERMOTT, WILL & EMERY LLP
340 Madison Avenue
New York, NY 10017
(212) 547-5444